Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5546 | **DATE** | 11/15/2001 |
| **CASE TITLE** | Twalla Joy Haynes vs. Harrah's Casino Joliet | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendant's motion for summary judgment [11-1] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 16 2001 | |
| | Notified counsel by telephone. | | date docketed | 23 |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | 11/15/2001 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| IS | courtroom deputy's initials | 01 NOV 15 PM 4:15 Date/time received in central Clerk's Office | IS mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TWALLA JOY HAYNES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 99 C 5546 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| HARRAH'S CASINO JOLIET, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED NOV 16 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff, Twalla Joy Haynes, filed suit against Defendant, Harrah's Casino Joliet, to recover damages for a back injury she allegedly sustained while working on Defendant's gaming vessel the M/V *Southern Star II*. Plaintiff contended that Defendant was liable for damages under the Jones Act for negligence and under general maritime law for unseaworthiness and maintenance and cure. Presently, Defendant moves this Court for summary judgement on Plaintiff's negligence and unseaworthiness claims pursuant to Federal Rule of Civil Procedure 56(c).[1] For the following reasons, this Court grants Defendant's Motion for Summary Judgment.[2]

---

[1] Plaintiff withdrew her maintenance and cure claim in open court on September 13, 2001. (Tr. Oral Argument 9/13/01.)

[2] The parties have consented to have this Court conduct any and all proceedings, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(b).



## I. Background

During the relevant time period, Plaintiff worked on Defendant's gaming vessel the M/V *Southern Star II* as an EVS/Maintenance cleaner.[3] Her responsibilities as an EVS/Maintenance cleaner consisted of cleaning and removing garbage from the first deck, transporting clean ashtray sand from a storage area to the ashtrays located on the first deck, and changing ashtray sand (dirty to clean) in the ashtrays located on the first deck.[4] Plaintiff received comprehensive training from Defendant on cleaning and removing garbage. (Def.'s Local Rule 56.1 Statement ¶ 67.) She also received training from Defendant on the safe transport of items such as garbage. (*Id.* ¶ 66.) However, Plaintiff claimed that she never received training from Defendant on the proper way to lift. (Def.'s Resp. Pl.'s Local Rule 56.1 Statement ¶ 1.)

On September 6, 1996, Defendant scheduled Plaintiff to work on the first deck of the M/V *Southern Star II* from 3:00 P.M. to 11:00 P.M. Betty McCullough, Plaintiff's supervisor, was scheduled to work the same shift, and so was Corey Franklin, another EVS/Maintenance cleaner. While cleaning the first deck around 6:15 P.M. on September 6, Plaintiff noticed a yellow garbage container with a handle on one side and wheels on the bottom of that same side. Plaintiff had seen similar garbage containers while working on the M/V *Southern Star II*, but she had never used that type of garbage container to transport garbage. When Plaintiff first noticed the garbage

---

[3] The following facts are either uncontroverted or narrated in the light most favorable to Plaintiff, the nonmoving party. Because Plaintiff failed to respond to Defendant's Local Rule 56.1 Statement of Uncontested Facts, the facts set forth therein are deemed admitted by Plaintiff for purposes of this decision. *See* Local R. 56.1(b)(3)(B).

[4] The garbage cans used by Defendant on the M/V *Southern Star II* had ashtrays on top of them. Defendant's employees would maintain about one and a half inches of ashtray sand in the ashtrays.

container, it was located next to an elevator in the guest aisle of the first deck. Plaintiff did not know who placed the garbage container in that location.

Upon looking inside of the garbage container, Plaintiff discovered two bags of ashtray sand. Garbage containers onboard the M/V *Southern Star II* normally contained bags of ashtray sand; Defendant did not prohibit its employees from depositing bags of ashtray sand into garbage containers. As stated by Madeline Hudgens, one of Defendant's employees, "Anything could end up in [the garbage containers]." (Hudgens Dep. at 36.)

Shortly after Plaintiff discovered the bags of ashtray sand inside of the garbage container, Franklin, who was working nearby, moved the garbage container from near the elevator into the hallway, a distance of about six feet. Then both Plaintiff and Franklin continued with their work.

Around 9:00 P.M., two hours prior to the end of Plaintiff's shift, Plaintiff noticed that the garbage container was still in the hallway where Franklin had left it. Since Plaintiff did not see anyone else around, she decided to move the garbage container herself and transport it via an elevator to the supply room of the M/V *Southern Star II*.[5] To place the weight of the garbage container on its wheels, Plaintiff pulled the garbage container back. (Def.'s Local Rule 56.1 Statement ¶ 30; Pl.'s Dep. at 25.) With the weight of the garbage container on its wheels, Plaintiff then pushed the garbage container toward the elevator. (*Id.*) Plaintiff set the garbage container down without any trouble upon reaching the elevator. (Def.'s Local Rule 56.1 Statement ¶¶ 32-33; Pl.'s Dep. at 26.) A moment later, she pushed the elevator button and waited for the elevator door to open. (Def.'s Local Rule 56.1 Statement ¶ 32; Pl.'s Dep. at 26.) When

---

[5] Plaintiff did not ask anyone to move the garbage container for her. (Def.'s Local Rule 56.1 Statement ¶¶ 27-28.)

the elevator door opened, Plaintiff tilted the garbage container toward her and pushed it into the elevator. (Def.'s Local Rule 56.1 Statement ¶ 34; Pl.'s Dep. at 26.) As she set the garbage container down inside of the elevator, Plaintiff experienced a jerk in her back and felt pain rip up the left side of her back. (Def.'s Resp. Pl.'s Local Rule 56.1 Statement ¶ 15.) Nevertheless, Plaintiff exited the elevator pushing the garbage container, and she successfully transported the garbage container to the supply room.[6] (Def.'s Local Rule 56.1 Statement ¶ 39.) Thereafter, Plaintiff continued to work on the first deck until her shift ended at 11:00 P.M.

After her shift ended, Plaintiff informed McCullough about the back pain. McCullough prepared an incident report in connection with Plaintiff's complaint of back pain. Three days later, on Monday, Plaintiff visited Dr. Eileen Davis. On December 9, 1996, Dr. Davis gave Plaintiff permission to return to work. Plaintiff returned to work the next day, and she continued working for Defendant until Plaintiff resigned on August 27, 1998.

On August 25, 1999, Plaintiff filed suit against Defendant alleging claims under the Jones Act and general maritime law. In May 2001, Defendant filed the instant Motion for Summary Judgment. We now address the issues raised in that motion.

## II. Discussion

### A. Standard of Review

The court will render summary judgment only if the pleadings and supporting documents show that "there is no genuine issue as to any material fact and that the moving party is entitled

---

[6] Although two men were riding the elevator with Plaintiff, Plaintiff neither told them about her back pain nor asked them for assistance. (*Id.* ¶¶ 37-38.)

to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences therefrom in the nonmoving party's favor. *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999).

The moving party in a motion for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden is met, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

### B. Negligence Under the Jones Act

Plaintiff bases her negligence claims under the Jones Act on the following allegations: the M/V *Southern Star II* was understaffed, the crew of the M/V *Southern Star II* was incompetent, Defendant failed to supply Plaintiff with proper equipment to move heavy garbage, and Defendant failed to properly train Plaintiff on how to lift or move heavy garbage. According to Plaintiff, these negligent acts or omissions by Defendant caused or contributed to Plaintiff's back injury.

The Jones Act grants any seaman who suffers personal injury in the course of his employment the right to maintain an action for damages against the shipowner. 46 app. U.S.C. § 688. Liability under the Jones Act is based on negligence. The seaman must show that his

injuries resulted "in whole or in part from the negligence of any of the officers, agents, or employees of [the shipowner]" to prevail. 45 U.S.C. § 51. Negligence may arise from a failure to remedy a dangerous condition on or about the vessel, a failure to use reasonable care to provide seamen with a safe place to work, a failure to supervise or instruct seamen about safe methods they can employ to carry out their duties, or a variety of other breaches of the shipowner's duty of care. *Landry v. Oceanic Contractors, Inc.*, 731 F.2d 299, 302 (5th Cir. 1984); *Watson v. Hollywood Casino-Aurora, Inc.*, No. 95 C 654, 1996 WL 559960, at *2 (N.D. Ill. Sept. 30, 1996). The mere fact that an injury occurred does not give rise to a presumption of negligence under the Jones Act. For the injured seaman to recover under the Jones Act, he must affirmatively prove that the shipowner or its employees were, in fact, negligent. *Atlass v. Atlass*, 350 F.2d 592, 599 (7th Cir. 1965); *Gaddis v. Orgulf Transp. Co.*, 680 F. Supp. 1279, 1284 (S.D. Ill. 1988).

Here, Plaintiff has failed to present sufficient facts to demonstrate that Defendant was negligent on September 6, 1996, in any way. Plaintiff's contention that Defendant was negligent because the M/V *Southern Star II* was understaffed (and therefore no one was available to help Plaintiff move the garbage container) must fall because Plaintiff has not presented a shred of evidence to show that it was unreasonable for Defendant to expect Plaintiff to move the garbage container herself, assuming Defendant expected Plaintiff to move the garbage container herself in the first place.[7] A review of all the pertinent evidence leads only to the conclusion that moving the garbage container was a one-person job. Franklin moved the garbage container himself.

---

[7] Plaintiff has not alleged that anyone ordered Plaintiff to move the garbage container by herself. *Cf. Marceaux v. Conoco, Inc.*, 124 F.3d 730, 733 (5th Cir. 1997); *Moschi v. S/S Edgar F. Luckenbach*, 295 F. Supp. 849, 850 (E.D. La. 1969).

Plaintiff moved the garbage container herself, without asking anyone for assistance.[8] Plaintiff cannot rely on the occurrence of an injury to demonstrate that the task of moving the garbage container was a two-person job, even accepting Plaintiff's testimony that the garbage inside of the container weighed approximately 100 pounds. *See Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 437 (4th Cir. 1999) (The basis of liability under the Jones Act "remains grounded in negligence and not merely on 'the fact that injuries occur.'" (quoting *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994))). That is what Plaintiff is trying to do here.[9]

Plaintiff's assertion that Defendant was negligent by placing an incompetent crew on the M/V *Southern Star II* must also fall. The lone fact that Franklin left the garbage container in the hallway, which is the only fact that Plaintiff cites to in support of this assertion, cannot raise an inference of crew incompetence under the circumstances presented here. *See Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989) ("Although we must . . . draw any inferences from the record in favor of [the nonmoving party], we are not required to draw every conceivable inference from the record. We need draw only reasonable ones."). Third, Plaintiff's argument that Defendant was negligent because it did not provide Plaintiff with proper equipment to perform her duties lacks sufficient evidentiary support to withstand summary judgment. The evidence indicates that Defendant provided Plaintiff with a garbage container with wheels to transport garbage. Even if we accept Plaintiff's testimony that the weight of the

---

[8] Plaintiff has presented no evidence showing that she was the only cleaner onboard the M/V *Southern Star II* at the time.

[9] We note that the record includes neither testimony, expert or otherwise, nor other evidence demonstrating that moving the garbage container was a two-person job. *Cf. Marceaux*, 124 F.3d at 733; *Moschi*, 295 F. Supp. at 851-52.

garbage inside of the container was approximately 100 pounds, nothing from the record demonstrates that the garbage container provided by Defendant was inadequate to transport 100 pounds. *See Watson v. Hollywood Casino-Aurora, Inc.*, No. 95 C 654, 1997 WL 222885, at *1 (N.D. Ill. Apr. 24, 1997) (finding that the defendant exercised reasonable care by providing plaintiff with a change cart to carry out her duties). Consequently, in terms of providing Plaintiff with adequate equipment to carry out her duties, we find that Defendant exercised reasonable care as a matter of law.

Plaintiff's last argument under the Jones Act is that Defendant was negligent by failing to provide Plaintiff with proper training on how to lift or move heavy garbage. The argument appears irreconcilable with Plaintiff's admissions that she received "comprehensive training" on the removal of garbage as well as training on the safe transport of items. (Def.'s Local Rule 56.1 Statement ¶¶ 66-67.) In any event, Plaintiff's insistence that she never received training on how to lift heavy garbage is insignificant because at no time did she attempt to lift the garbage container on September 6, 1996. The record only shows that Plaintiff pulled back, pushed, and lowered the garbage container. (*Id.* ¶¶ 30, 32, 36; Pl.'s Dep. at 25-26.) As the garbage container had wheels on it, there would be no reason for Plaintiff to lift the garbage container. Therefore, even assuming that Defendant did not train Plaintiff on how to lift heavy garbage, this Court finds that Defendant was not negligent as a matter of law in this case because, based on the evidence presented, no reasonable jury could find that Defendant's omission was a cause of Plaintiff's alleged back injury. *See Consolidated Rail Corp.*, 512 U.S. at 543 (holding that the employee must show that employer negligence played a part in producing the injury to recover under the Federal Employers' Liability Act).

Plaintiff's contention that Defendant failed to train Plaintiff on how to move heavy garbage also falls on causation grounds. There is no evidence in the record showing a link between Defendant's purported failure to train and Plaintiff's alleged back injury. The burden of proving causation under the Jones Act is "very light" and "featherweight" but it is not nonexistent. *Brantley v. Hollywood Casino-Aurora, Inc.*, No. 96 C 2082, 1998 WL 513089, at *3 (N.D. Ill. Aug. 14, 1998).

### C. Unseaworthiness Under General Maritime Law

Plaintiff bases her unseaworthiness claims on the same allegations underlying her Jones Act claims: the M/V *Southern Star II* was understaffed, the crew of the M/V *Southern Star II* was incompetent, Defendant failed to supply Plaintiff with proper equipment to move heavy garbage, and Defendant failed to properly train Plaintiff on how to lift or move heavy garbage. To prove her unseaworthiness claims, Plaintiff relies on the same evidence that she relied on to support her Jones Act claims.

General maritime law imposes an absolute duty on the shipowner to provide a seaworthy vessel. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960). A vessel is seaworthy if it, its appurtenances, and its crew are reasonably fit for their intended use or service. *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971); *Mitchell*, 362 U.S. at 550; *Marceaux*, 124 F.3d at 734; *Hughes v. Conticarriers & Terminals, Inc.*, 6 F.3d 1195, 1197 (7th Cir. 1993); *Moschi*, 295 F. Supp. at 852. The standard is not perfection. A vessel and its appurtenances may be seaworthy yet unable to withstand every peril of the sea. *Mitchell*, 362 U.S. at 550.

Our discussion of the evidence presented with respect to Plaintiff's particular Jones Act claims applies here as the allegations and evidence are the same. *See Saleh v. United States*, 849 F. Supp. 886, 893 (S.D.N.Y. 1994) (commenting on the overlapping nature of negligence and unseaworthiness claims). We find that, in addition to being insufficient to show negligence for the reasons stated in Section II(B), the evidence presented by Plaintiff is insufficient to show that a reasonable jury could find that the M/V *Southern Star II* was unseaworthy on September 6, 1996. Briefly, none of the evidence indicates that Defendant failed to properly staff the M/V *Southern Star II* or that Defendant failed to provide the M/V *Southern Star II* with a competent crew. As to the latter, even if we were to find that Franklin's moving the garbage container into the hallway constituted an act of incompetence, we would still grant summary judgment to Defendant because the case law is clear that a single act of incompetence by a crew member cannot render a vessel unseaworthy unless the crew member's incompetence is part of a continuous course of conduct. *Usner*, 400 U.S. at 500 ("To hold that [an] individual act of negligence rendered the ship unseaworthy would be to subvert the fundamental distinction between unseaworthiness and negligence that we have so painstakingly and repeatedly emphasized in our decisions."). Plaintiff has provided no evidence of a continuous course of conduct.

Continuing on, none of the evidence indicates that Defendant failed to provide Plaintiff with proper equipment to carry out her duties or that Defendant's purported failure to train Plaintiff on how to lift or move heavy garbage caused her alleged back injury. "In an unseaworthiness claim under general maritime law, proximate cause means that the unseaworthiness played a substantial part in bringing about or actually causing the injury and that

Copies have been mailed to:

| | |
|---|---|
| STEPHEN J. McMULLEN, Esq.<br>212 West Washington Street<br>Suite 909<br>Chicago, IL 60606 | GLENN C. RONALDSON, Esq.<br>Ronaldson and Kuchler, L.L.C.<br>230 West Monroe Street<br>Suite 325<br>Chicago, IL 60606 |
| Attorney for Plaintiff | Attorney for Defendant |

the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Saleh*, 849 F. Supp. at 895. On September 6, 1996, Plaintiff only pulled back, pushed, and lowered the garbage container; she never lifted it. Additionally, Plaintiff has failed to present any evidence showing a link between Defendant's purported failure to train and Plaintiff's alleged back injury. Therefore, Plaintiff has no viable unseaworthiness claim.

### III. Conclusion

For the reasons stated, this Court grants Defendant's Motion for Summary Judgment.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** November 15, 2001.